**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**



SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

DEC 20 2007

J. T. NOBLIN, CLERK
BY_____DEPUTY

**CAROLYN DOWNS and TANYA FLEMING,
Individually and for the Estate of
SAMUEL DOWNS, Deceased,**                                    **PLAINTIFFS**

**v.**                              CIVIL ACTION NO._____

**PFIZER, INC.**                                              **DEFENDANT**

**Pending Transfer to MDL-1699
(In re Bextra and Celebrex Marketing,
Sales Practices and Products
Liability Litigation)**

### NOTICE OF REMOVAL

**TO:**

Bryan Aylstock
Justin Witkin
Aylstock, Witkin, Kreis & Overholtz, PLLC
55 Baybridge Drive
Gulf Breeze, Florida 32561

**ATTORNEYS FOR PLAINTIFFS**

Barbara Dunn
P.O. Box 327
Jackson, Mississippi 39205

**HINDS COUNTY CIRCUIT COURT CLERK, FIRST JUDICIAL DISTRICT**

IN ACCORDANCE WITH 28 U.S.C. §§ 1332, 1441, and 1446, you are hereby notified

that Defendant Pfizer Inc. (incorrectly named as "Pfizer, Inc." and hereinafter "Pfizer" or

"Defendant"), with reservations of all rights, has removed this civil action from the Circuit Court

of Hinds County, Mississippi, First Judicial District, to the United States District Court for the

Southern District of Mississippi, Jackson Division, and in support thereof states the following:

# I.

## Introduction

### A.    The Multi-District Litigation Proceedings.

This is a pharmaceutical product liability action.  Plaintiffs allege that their Decedent experienced injuries and death as a result of taking Bextra®, a prescription medication.  The Judicial Panel on Multidistrict Litigation (JPML) has coordinated pretrial proceedings in personal injury actions relating to Bextra® pursuant to 28 U.S.C. § 1407, and assigned the litigation to the Honorable Charles R. Breyer of the United States District Court for the Northern District of California (the MDL Court).  *See In re Bextra & Celebrex Mktg. Sales Pracs. & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005) (creating MDL 1699).  This case is expected to transfer to that court as a "tag-along action." *See id.* at 1377 n.1; Rules 1.1 & 7.4(a) of Rules for Multidistrict Litigation Under 28 U.S.C. § 1407, 1999 F.R.D. 425 (J.P.M.L. 2001). Defendant will be filing a Motion to Stay or Defer all proceedings in this Court pending MDL transfer.

### B.    Plaintiffs' Lawsuit.

On or about October 12, 2007, Plaintiffs Carolyn Downs and Tanya Fleming filed this civil action individually and on behalf of the Estate of Samuel Downs, deceased, in the Circuit Court of Hinds County, Mississippi, First Judicial District, Civil Action No. 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CIV. *See* Compl. (Exhibit A).  The United States District Court for the Southern District of Mississippi, Jackson Division, had, at the time the suit was filed, and now has, original subject matter jurisdiction over this civil action because there exists complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000, as established below.  *See* 28 U.S.C. § 1332; *see also id.* § 1441(a).

No party properly joined as a defendant in this action is a citizen of the state of Mississippi, the state in which the action was brought. *See id.* § 1441(b).

Plaintiffs contend that Defendant is liable for various alleged injuries under theories of negligence and negligent infliction of emotional distress, strict products liability, breach of express/implied warranties, negligent misrepresentation, and common law and statutory fraud, fraudulent misrepresentation, and suppression. *See generally* Compl. ¶¶ 38-104.

## II.

### Diversity of Citizenship Exists Between Plaintiffs and Defendant

There is complete diversity of citizenship between Plaintiffs and Pfizer, the sole defendant in this action.

Plaintiffs Carolyn Downs and Tanya Fleming are, and were at all relevant times, residents and citizens of Mississippi. *See* Compl. ¶¶ 5, 6. The Decedent, Samuel Downs, likewise was at all relevant times a resident and citizen of Mississippi. *See* Compl. ¶ 8; *see also* 28 U.S.C. § 1332(c)(2).

Defendant Pfizer is now, and was at the time of filing of Plaintiffs' Complaint, a Delaware corporation with its principal place of business in New York, and thus is a citizen of Delaware and New York. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."); Compl. ¶ 9 (stating that Pfizer is a Delaware corporation with its principal place of business in New York).

Accordingly, because Plaintiffs are Mississippi citizens and because Pfizer, the sole defendant, is not a citizen of Mississippi, complete diversity exists between Plaintiffs and Defendant.

# III.

## The Amount-in-Controversy Requirement is Satisfied

The amount-in-controversy requirement of 28 U.S.C. § 1332(a) is plainly satisfied. It is facially apparent that Plaintiffs assert claims which, if proved, would more likely than not exceed $75,000, exclusive of interest and costs. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (concluding that where it is "facially apparent" from the state-court complaint that the amount in controversy exceeds the jurisdictional minimum, the defendant need only point out such facts). The following alleged facts support a finding of the requisite amount in controversy:

Plaintiffs allege that, as a result of taking Bextra®, their Decedent "[s]uffered a myocardial infarction (heart attack) . . . which took his life." Compl. ¶ 27. They allege that the action arises "[o]ut of injuries and damages sustained by Plaintiff resulting from Plaintiffs' Decedent's use of Bextra® . . . including medical bills, lost wages, and pain and suffering." *Id.* ¶ 14. Plaintiffs further allege that they "[h]ave suffered damages, including but not limited to funeral expenses, accrued medical expenses, pain, suffering and mental anguish of Plaintiffs' Decedent, past and future lost wages and benefits of Plaintiffs' Decedent, past and future loss of enjoyment of life by Plaintiffs' Decedent, past and future loss of love, society and companionship of Plaintiffs' Decedent, and all other damages to be proven at trial." *Id.* ¶ 104. Plaintiffs seek unlimited compensatory and punitive damages. *Id.* at 21 (Ad Damnum "WHEREFORE" clause); *see also id.* ¶ 26.

Although Pfizer denies any wrongdoing, based upon the nature of these allegations, it is facially apparent that the value of Plaintiffs' claims, if proved, would exceed $75,000, exclusive of interest and costs. *See De Aguilar v. Boeing Co.*, 11 F.3d at 57; *see also, e.g., Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (concluding that district court did not err in

finding that personal injury claims exceeded $75,000 where the claimant alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization."). Further, federal courts sitting in diversity in Mississippi "have routinely held that unspecified claims for punitive damages sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. §1332." *Ross v. First Family Fin. Servs., Inc.*, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002) (citing *Marcel v. Pool Co.*, 5 F.3d 81, 84-85 (5th Cir. 1993)). Accordingly, the amount in controversy requirement plainly is met based upon the allegations of Plaintiffs' Complaint.

## IV.

### Consent to Removal

Pfizer is the sole defendant in this action and consents to removal. Because there are no other defendants in this action, no other defendants are required to consent to and/or join in this removal.

## V.

### Removal is Timely

Pfizer was served on December 10, 2007. Accordingly, this Notice of Removal is timely filed within 30 days after the service of a summons and copy of the initial pleading setting forth the claim for relief upon which this action is based. *See* 28 U.S.C. § 1446(b); *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

## VI.

### Proper Court for Removal

The United States District Court for the Southern District of Mississippi, Jackson Division, embraces Hinds County, Mississippi, First Judicial District, the county in which the state court action is now pending. *See* 28 U.S.C. § 104(b)(1). Thus, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

## VII.

### Process and Pleadings

Pursuant to 28 U.S.C. § 1446(a), a certified copy of the entire file, including all process, pleadings, and orders served upon the Defendant, is attached hereto as Exhibit A.

## VIII.

If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of the position that this case is removable.

WHEREFORE, Pfizer serves this Notice of Removal, and removes this civil action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the Southern District of Mississippi, Jackson Division, being the district and division of said court for the county in which this action is pending. Plaintiffs are notified to proceed no further in state court unless by order of the United States District Court for the Southern District of Mississippi, Jackson Division.

This the 20th day of December, 2007.

Respectfully submitted,

**PFIZER INC.**

By: _____

Walter T. Johnson (MBN 8712)
Leigh D. Vernon (MBN 99696)

OF COUNSEL:

WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300
Post Office Box 650
Jackson, Mississippi 39205-0650
Telephone: (601) 948-6470
Facsimile: (601) 354-3623

SOCHA, PERCZAK, SETTER & ANDERSON, P.C.
Charles Q. Socha (MBN 101382)
K. Michele Anderson (MBN 101421)
Denver Financial Center Tower I,
1775 Sherman Street, Suite 1925
Denver, CO 80203
Telephone: (303) 832-7265
Facsimile: (303) 832-7438

*ATTORNEYS FOR DEFENDANT PFIZER INC.*

## CERTIFICATE OF SERVICE

I, Walter T. Johnson, do hereby certify that I have this day served via United States mail, first-class postage prepaid, unless otherwise specified, a true and correct copy of the above and foregoing document to the following:

Bryan Aylstock
Justin Witkin
Aylstock, Witkin, Kreis & Overholtz, PLLC
55 Baybridge Drive
Gulf Breeze, Florida 32561

**ATTORNEYS FOR PLAINTIFFS**

Barbara Dunn  **(VIA HAND-DELIVERY)**
P.O. Box 327
Jackson, Mississippi 39205

**HINDS COUNTY CIRCUIT COURT CLERK, FIRST JUDICIAL DISTRICT**

This the 20th day of December, 2007.

WALTER T. JOHNSON

# CIVIL COVER SHEET

*3:07cv745 DPJ-JCS*

The JS-44 Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Carolyn Downs and Tanya Fleming, Individually and for the Estate of Samuel Downs, Deceased

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF:   Stonewall
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c)** ATTORNEY'S NAME (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
BRYAN AYLSTOCK AND JUSTIN WITKIN
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
55 BAYBRIDGE DRIVE         PHONE: 850-916-7450
GULF BREEZE, FL 32561      FAX: 850-916-7449

## DEFENDANTS
Pfizer, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

Attorneys (If Known): Walter T. Johnson/Leigh D. Vernon   **(601) 948-6470**
Watkins & Eager PLLC                                      **(601) 354-3623 (fax)**
400 East Capitol Street, Suite 300                        P.O. Box 650
Jackson, MS 39201                                         Jackson, MS 39205

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Gov't Not a Party)
**X** 4 Diversity (Indicate Citizenship of Parties in Item III)

FILED   SOUTHERN DISTRICT OF MISSISSIPPI
DEC 20 2007
J.T. NOBLIN, CLERK
BY _____ DEPUTY

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND IN ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)   AND ONE BOX FOR DEFENDANT

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | **X** 1 | ☐ 1 | Incorporated *or* Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in another State | ☐ 5 | **X** 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐110 Insurance<br>☐120 Marine<br>☐130 Miller Act<br>☐140 Negotiable Instrument<br>☐150 Recovery of Overpayment & Enforcement of Judgment<br>☐151 Medicare Act<br>☐152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐153 Recovery of Overpayment of Vet's Benefits<br>☐160 Stockholders' Suits<br>☐190 Other Contract<br>☐195 Contract Prod.Liability<br>☐196 Franchise | **PERSONAL INJURY**<br>☐310 Airplane<br>☐315 Airplane Product Liability<br>☐320 Assault, Libel, Slander<br>☐330 Federal Employers' Liability<br>☐340 Marine<br>☐345 Marine Product Liability<br>☐350 Motor Vehicle<br>☐355 Motor Vehicle Product Liability<br>☐360 Other Personal Injury | **PERSONAL INJURY**<br>☐362 Personal Injury – Med. Malpractice<br>**X**365 Personal Injury – Product Liability<br>☐368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐370 Other Fraud<br>☐371 Truth in Lending<br>☐380 Other Personal Property Damage<br>☐385 Property Damage Product Liability | ☐610 Agriculture<br>☐620 Other Food & Drug<br>☐625 Drug Related Seizure of Property 21USC§881<br>☐630 Liquor Laws<br>☐640 Railroad & Truck<br>☐650 Airline Regulations<br>☐660 Occupational Safety/Health<br>☐690 Other | ☐422 Appeal 28USC§158<br>☐423 Withdrawal 28USC§157<br>**PROPERTY RIGHTS**<br>☐820 Copyrights<br>☐830 Patent<br>☐840 Trademark | ☐400 State Reapportionment<br>☐410 Antitrust<br>☐430 Banks & Banking<br>☐450 Commerce<br>☐460 Deportation<br>☐470 Racketeer Influenced and Corrupt Organizations<br>☐480 Consumer Credit<br>☐490 Cable/Sat TV<br>☐810 Selective Service<br>☐850 Securities/Commodities/ Exchange<br>☐875 Customer Challenge 12USC§3410<br>☐890 Other Statutory Actions<br>☐891 Agricultural Acts<br>☐892 Economic StabilizationAct<br>☐893 Environmental Matters<br>☐894 Energy Allocation Act<br>☐895 FreedomofInformationAct<br>☐900 Appeal of Fee Determination Under EqualAccesstoJusticeAct<br>☐950 Constitutionality of State Statute |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** / **SOCIAL SECURITY** / **FEDERAL TAX SUITS** | |
| ☐210 Land Condemnation<br>☐220 Foreclosure<br>☐230 Rent Lease & Ejectm't<br>☐240 Torts to Land<br>☐245 Tort Product Liability<br>☐290 All Other Real Prop. | ☐441 Voting<br>☐442 Employment<br>☐443 Housing/ Accommodations<br>☐444 Welfare<br>☐445 Amer. w/Disabilities - Employment<br>☐446 Amer. w/Disabilities - Other<br>☐440 Other Civil Rights | ☐510 Motions to Vacate Sentence<br>HABEAS CORPUS:<br>☐530 General<br>☐535 Death Penalty<br>☐540 Mandamus & Other<br>☐550 Civil Rights<br>☐555 Prison Condition | **LABOR**<br>☐710 Fair Labor Standards Act<br>☐720 Labor/Mgmt. Relations<br>☐730 Labor/Mgmt. Reporting and Disclosure Act<br>☐740 Railway Labor Act<br>☐790 Other Labor Litigation<br>☐791 Empl. Ret. Inc. Security Act<br>**SOCIAL SECURITY**<br>☐861 HIA (1395ff)<br>☐862 Black Lung (923)<br>☐863 DIWC/DIWW (405(g))<br>☐864 SSID Title XVI<br>☐865 RSI(405(g))<br>**FEDERAL TAX SUITS**<br>☐870 Taxes (US Plaintiff or Def.)<br>☐871 IRS-Third Party 28USC§7609 | |

## V. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☐ 1 Original Proceeding
**X** 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 another district (specify) — Transferred from
☐ 6 Multidistrict Litigation
☐ 7 Magistrate Judgment — Appeal to District Judge from

## VI. Cause of Action
(Cite the U.S. civil statute under which you are filing. **(Do not cite jurisdictional statute unless diversity.)**
28 U.S.C. SECTION 1441; 28 U.S.C. SECTION 1332; 28 U.S.C. SECTION 1446

Brief description of cause:   pharmaceutical products liability action

## VII. REQUESTED IN COMPLAINT:
☐ Check if this is a **CLASS ACTION** UNDER F.R.C.P.23
DEMAND: Unspecified
Check YES only if demanded in complaint:
**JURY DEMAND: X** YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY   (See Instructions)
JUDGE _____   DOCKET NUMBER _____

December 20, 2007
Date

Signature of Attorney of Record   Walter T. Johnson

FOR OFFICE USE ONLY
RECEIPT # *022830*   AMOUNT $*350.00*   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____

IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

CAROLYN DOWNS and TANYA FLEMING,
individually and for the Estate of
SAMUEL DOWNS, Deceased,

       PLAINTIFFS,

VS.

      CIVIL ACTION NO.: 25-07-1017CIV

PFIZER, INC.

       DEFENDANT,

**F I L E D**

OCT 1 2 2007

BARBARA DUNN, CIRCUIT CLERK

BY_____ D.C.

## COMPLAINT
## JURY TRIAL DEMANDED

    **COME NOW** Plaintiffs CAROLYN DOWNS and TANYA FLEMING (sometimes

hereinafter referred to as "Plaintiffs"), by counsel, individually and for the Estate of SAMUEL

DOWNS (sometimes hereinafter referred to as "Plaintiffs' Decedent") and for their cause of

action against Defendant, PFIZER, INC., allege and state as follows:

### PRELIMINARY STATEMENT

    1.    This is a civil proceeding brought by Plaintiff to recover damages for injuries

arising from Plaintiffs' Decedent's purchase and use of the prescription drug BEXTRA®

(valdecoxib).

    2.    BEXTRA® was researched, created, formulated, tested, developed, designed,

licensed, assembled, compounded, manufactured, marketed, promoted, advertised, distributed,

labeled, detailed, supplied, packaged and/or sold by Defendant as more fully detailed herein

below.

1

3.     BEXTRA® was defective and unreasonably dangerous in that it posed a serious danger of life-threatening injury to the Plaintiffs' Decedent and other Mississippi residents.

4.     Unaware of the danger posed by BEXTRA®, Plaintiffs' Decedent, Samuel Downs, ingested BEXTRA® and suffered a myocardial infarction. As a result, Samuel Downs lost his life.

## THE PARTIES

5.     Plaintiff Carolyn Downs is an adult resident and citizen of Stonewall, Mississippi, and is the surviving spouse of Plaintiffs' Decedent.

6.     Plaintiff Tanya Fleming is an adult resident and citizen of Stonewall, Mississippi, and is the surviving daughter of Plaintiffs' Decedent.

7.     On information and belief, there are no other heirs of Plaintiffs' Decedent.

8.     Plaintiffs' Decedent, Samuel Downs, at the times relevant herein was an adult resident of Stonewall, Mississippi.

9.     Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business at 2355 East 42nd Street, New York, New York. Defendant Pfizer is licensed and registered to do business in Mississippi and can be served with process by serving its registered agent CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. Pfizer is one of the largest pharmaceutical companies in the United States, whether measured by number of prescriptions written, revenues, or market capitalization. At all times relevant hereto, defendant Pfizer was in the business of designing, testing, manufacturing, marketing, selling and distributing the pharmaceutical product BEXTRA®.

2

10.    This Court has personal jurisdiction over Defendant because it transacts substantial and continuous business in Mississippi.

11.    This Court has subject matter jurisdiction over this cause. The Plaintiff asserts claims exclusively under the statutory and common law of the State of Mississippi and specifically disclaims any and all other causes of action.

12.    Venue is proper in Hinds County, Mississippi, because the cause of action accrued or occurred in Hinds County, Mississippi, and the defendant is a foreign corporation..

13.    This is an action for damages in excess of any minimum jurisdictional amount for this Court, exclusive of interest and costs.

## COMMON FACTUAL ALLEGATIONS

14.    This is an action arising out of injuries and damages sustained by Plaintiff resulting from Plaintiffs' Decedent's use of BEXTRA®, manufactured and sold by Defendant, including medical bills, lost wages, and pain and suffering.

15.    Pfizer is in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling its product, BEXTRA®. Defendant, at all times relevant hereto, designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold BEXTRA® in Mississippi.

16.    Plaintiff ingested BEXTRA® as prescribed and as a result thereof, suffered injuries and damages.

17.    At all times relevant herein, Plaintiff was unaware of the serious side effects and dangerous properties of the drug as set forth herein.

18.    The product in question was designed, formulated, patented, marketed, sold, tested, warranted, and ultimately distributed by Defendant as BEXTRA®.

19.    BEXTRA® is in a class of drugs called non-steroidal anti-inflammatory drugs ("NSAIDs") with selective cyclooxygenase 2 inhibitory properties (COX-2 Inhibitor).  It was approved by the Food and Drug Administration on November 16, 2001, for the treatment and management of symptoms of osteoarthritis and rheumatoid arthritis in adults and painful menstrual cycles.

20.    As of March 2005, Pfizer refused to withdraw BEXTRA® from the market, despite scientific studies documenting greater than triple the risk of heart attacks, strokes and death in connection with the use of BEXTRA®.

21.    Defendant materially breached its obligations to consumers, such as Plaintiff's Decedent, including but not limited to its design, testing, manufacture, design, warning, marketing, warranting and sale of BEXTRA®.

22.    Defendant expressly and/or impliedly warranted to the market, including Plaintiff's Decedent, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials to the health care community, that BEXTRA® was safe, effective, fit and proper for its intended use.

23.    Defendant was aware of the substantial risks from taking BEXTRA® but failed to fully disclose the same.

4

24.     Defendant failed to meet the applicable standards of care which were intended for the benefit of individual consumers such as the Plaintiff, making the Defendant liable for the Plaintiffs' Decedent's injuries and death.

25.     Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and efficacy of this drug and concealed or understated its dangerous side effects.  Pfizer aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements.  Pfizer did this to increase sales and profits.

26.     At all times relevant hereto, Pfizer actually knew of the defective nature of its product as herein set forth, yet continued to design, manufacture, market, distribute and sell its product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product.  Pfizer's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to Plaintiff's Decedent, and therefore punitive damages are appropriate.

27.     Plaintiffs' Decedent was prescribed and began taking BEXTRA® from approximately September 27, 2004 until on or about October 20, 2004.  Plaintiff's Decedent suffered a myocardial infarction (heart attack) on or about October 20, 2004, which took his life.

28.     The damages sought herein are the direct and proximate result of Defendant's wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug BEXTRA®.

29.     Defendant was aware that BEXTRA® was not as effective or safe as other viable alternatives such as Aspirin, or NSAIDS such as ibuprofen or naproxen, however, Defendant promoted BEXTRA® to physicians in Mississippi, including the Decedent's prescribing physician, and overstated the efficacy of the drug, while failing to properly disclose the frill risks of the drug, including but not limited to gastro-intestinal bleeding and side-effects, cardiovascular risks such as heart attack and stroke.

30.     Had Defendant properly disclosed the risks associated with using BEXTRA®, Plaintiffs' Decedent would not have taken it for treatment of pain.

31.     To this date, Defendant has intentionally and continually downplayed the risk of adverse effects including, but not limited to increased risk of serious cardiovascular events, such as heart attacks, unstable angina, cardiac clotting, deep vein thrombosis, hypertension, and cerebrovascular events, such as strokes.

32.     Defendant materially breached its obligations to consumers, including Plaintiffs' Decedent, with respect their design, testing, manufacture, warning, marketing, and sale of BEXTRA®.

33.     The damages sought herein are the direct and proximate result of Defendant's wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing BEXTRA®.

34.     Defendant expressly and/or impliedly warranted to the market, including Plaintiffs' Decedent, by and through statements made by Defendant or their authorized agents or

sales representatives, orally and in publications, package inserts and other written materials to the

health care community, that BEXTRA® was safe, effective, fit and proper for its intended use.

35.    Defendant is estopped from asserting a statute of limitations defense because they

fraudulently concealed their wrongful conduct from Plaintiffs' Decedent.

36.    At all times relevant herein, Plaintiffs' Decedent was unaware of the serious side

effects and dangerous properties of the drug as set forth herein.

37.    As a direct and proximate result of ingesting BEXTRA®, Plaintiffs' Decedent

suffered from a myocardial infarction that ultimately resulted in his death.

## COUNT I
## NEGLIGENCE AND NEGLIGENT INFLICTION
## OF EMOTIONAL DISTRESS

38.    Plaintiff adopts by reference all of the allegations contained in the preceding

paragraphs above, each inclusive, as though fully set forth herein.

39.    Pfizer had a duty to exercise reasonable care to properly design, research, develop,

test, inspect, label and prepare for use the product, BEXTRA®,, which was introduced into the

stream of commerce, including a duty to insure that the product did not cause users to suffer from

unreasonable, dangerous or untoward adverse side effects.

40.    Pfizer failed to exercise ordinary care in the design, research, development,

manufacture, sale, testing, quality assurance, quality control, distribution and/or sale of

BEXTRA® into interstate commerce, in that Pfizer knew or should have known that the product,

BEXTRA®, created risk of unreasonable, dangerous or untoward adverse side effects.

41.    Pfizer knew, or in the exercise of reasonable care, should have known, that the

aforesaid product was of such a nature that if not properly manufactured, labeled, tested, and

7

inspected before sold, BEXTRA® was likely to cause injury to the product's user.

42.    Defendant breached that duty and was negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of BEXTRA® in that: BEXTRA® was defective when put on the market by Defendant; that with such defect, BEXTRA® was reasonably certain to be dangerous when put to normal use; and that Defendant failed to use reasonable care in designing or making BEXTRA® or in inspecting it for defects. Specifically, Defendant breached its duty by, among other things:

    a.  Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent, to the potential risks and serious side effects of the drug;

    b.  Failing to adequately and properly test and inspect the drug before placing the drug on the market;

    c.  Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, myocardial infarction (heart attack), stroke and/or death;

    d.  Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke and/or death;

    e.  Failing to provide adequate post-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of the drug;

    f.  Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendant knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

g. Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiffs' Decedent, in order to make a profit from sales.

43. Despite the fact that Defendant knew or reasonably should have known that BEXTRA® caused unreasonably dangerous risks and serious side effects, Defendant continued to promote and market BEXTRA® to the health care community and directly to consumers, including Plaintiffs' Decedent, knowing that there were safer methods for pain relief.

44. Pfizer knew, or reasonably should have known, that consumers such as Plaintiffs' Decedent would foreseeably suffer injury as a result of its failure to exercise ordinary care as set forth above.

45. As a direct and proximate result of the acts and omissions of Pfizer, Plaintiffs have suffered damages, including but not limited to funeral expenses, accrued medical expenses, pain, suffering and mental anguish of Plaintiffs' Decedent, past and future lost wages and benefits of Plaintiffs' Decedent, past and future loss of enjoyment of life by Plaintiffs' Decedent, past and future loss of love, society and companionship of Plaintiffs' Decedent, and all other damages to be proven at trial.

## COUNT II
## STRICT PRODUCTS LIABILITY (Design Defect)
## UNDER MISS. CODE. ANN. 11-1-63(a)(3)

46. Plaintiff adopts by reference all of the allegations contained in the preceding paragraphs above, each inclusive, as though fully set forth herein.

47. Pfizer is a "manufacturer" and "seller" within the meaning of Miss. Code. Ann. 11-1-63 in that it manufactured, assembled, designed, sterilized, tested, labeled, supplied,

packaged, distributed, marketed, advertised, detailed, promoted and/or sold, in the State of Mississippi, the drug BEXTRA®. The allegations in this paragraph, while generally applicable to all other allegations and counts in this complaint, are specifically applicable to all of Plaintiffs' allegations under Miss. Code. Ann. 11-1-63.

48.    BEXTRA® failed to function as expected and there existed a feasible design alternative that would have, to a reasonable probability, prevented the harm caused to Plaintiff and Plaintiffs' Decedent.

49.    The defective characteristics and aspects of the drug which caused harm to the Plaintiffs' Decedent could have been eliminated without substantially compromising the drug's usefulness or desirability.  These defective characteristics were specifically known to Pfizer at the time BEXTRA® was ingested by the Plaintiffs' Decedent.

50.    The defective characteristics and aspects of the drug which caused harm to the Plaintiffs' Decedent were not recognizable by the ordinary person with the ordinary knowledge common to the community.

51.    At all times material hereto, the Defendant had control of the design, assembly, packaging, marketing, advertising, manufacturing, labeling, testing, promoting, detailing, distribution and/or sale of the drug at issue.

52.    At all times material hereto, Pfizer engaged in the business of selling, distributing, supplying, manufacturing, marketing and promoting BEXTRA®, and this drug was defective and unreasonably dangerous to consumers, including the Plaintiffs' Decedent.

53.    At all times material hereto, the BEXTRA® sold, distributed, supplied, manufactured and/or promoted by Pfizer, was expected to reach, and did reach, prescribing

10

physicians and consumers in the State of Mississippi, including the Plaintiffs' Decedent, without

substantial change from the condition in which they were when manufactured, distributed, and

ultimately sold.

54.    At the time the BEXTRA® left the control of the Defendant, the drug was

defective in design and formulation in ways which include, but are not limited to, one or more of

the following particulars:

    a.  When placed in the stream of commerce, BEXTRA® contained unreasonably
        dangerous design defects and was not reasonably safe as intended to be used,
        subjecting Plaintiffs' Decedent to risks which far exceeded the benefits of
        BEXTRA®;

    b.  When placed in the stream of commerce, BEXTRA® was defective in design
        and formulation, making use of BEXTRA® more dangerous than an ordinary
        consumer and prescribing physician would expect and much more dangerous
        than other risks associated with bodily aches and pains;

    c.  The Plaintiffs' Decedent used the drugs for their intended purposes, i.e., to
        treat acute pain, and could not have discovered any defect in the drug products
        through the exercise of reasonable care;

    d.  The defective and dangerous condition of the BEXTRA® was neither open
        and obvious nor common knowledge to the Plaintiffs' Decedent;

    e.  BEXTRA® contained insufficient warnings to alert consumers, prescribing
        physicians, and users to the risks of heart attack, stroke, high blood pressure,
        and other serious side effects or reactions, especially since any benefit to
        BEXTRA® was purely transitory;

    f.  BEXTRA® was insufficiently tested;

    g.  There were insufficient instructions on the proper use of BEXTRA®;

    h.  There was misleading advertising and over-promotion concerning the benefits
        of using BEXTRA®;

    i.  There were inadequate post-marketing warnings or instructions because, after

Pfizer knew or should have known of the significant cardiovascular risks, Pfizer failed to provide adequate warnings to consumers, health care professionals, and the Plaintiffs' Decedent and continued to promote the sale and use of BEXTRA®;

j.   The BEXTRA® had not been materially altered or modified prior to use by the Plaintiffs' Decedent;

k.   The Defendant knew or, in light of reasonably available knowledge should have known, that BEXTRA® as designed was defective and unreasonably dangerous; and

l.   The BEXTRA® did not function as expected in that it was not effective for its stated purpose, particularly in light of the serious adverse health effects associated with the drug.

55.    As a direct and proximate result of the acts and omissions of Pfizer, Plaintiffs have suffered damages, including but not limited to funeral expenses, accrued medical expenses, pain, suffering and mental anguish of Plaintiffs' Decedent, past and future lost wages and benefits of Plaintiffs' Decedent, past and future loss of enjoyment of life by Plaintiffs' Decedent, past and future loss of love, society and companionship of Plaintiffs' Decedent, and all other damages to be proven at trial.

**COUNT III**
**STRICT PRODUCTS LIABILITY (Warnings Defect)**
**UNDER MISS. CODE. ANN. 11-1-63(a)(2)**

56.    Plaintiff adopts by reference all of the allegations contained in the preceding paragraphs above, each inclusive, as though fully set forth herein.

57.    BEXTRA® was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent,

to the dangerous risks and reactions associated with BEXTRA® when used for its intended or reasonably foreseeable purpose. Those dangerous risks and reactions included, but were not limited to, myocardial infarction, stroke and/or death and other serious and life threatening side effects, especially since any benefit experienced was purely transitory.

58.    Defendant, as manufacturer and seller of a prescription drug, is held to the level of knowledge of an expert in the field.

59.    Defendant had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent, of the potential risks and serious side effects associated with the use of BEXTRA®.

60.    As a direct, legal, proximate and producing result of Defendant's failure to warn, Plaintiffs' Decedent and Plaintiff sustained injury and damages.

61.     Any warnings and/or instructions that that were given by said Defendant were inaccurate, incomplete, ambiguous, and constituted deliberate misrepresentations in their inclusions and omissions.

62.    Plaintiffs' Decedent used BEXTRA® for its intended purpose, i.e., to treat acute pain, and as directed by his Physician.

63.    Plaintiffs' Decedent could not have discovered any defect in the drug through the exercise of reasonable care, and the defective and dangerous condition of the drug was neither open and obvious nor common knowledge to the Plaintiffs' Decedent.

64.    At the time the drug left their control, the Defendant knew or, in light of reasonably available knowledge should have known, of the dangerous risks and reactions associated with the drugs.

13

65.     As a direct and proximate result of the acts and omissions of Pfizer, Plaintiffs have suffered damages, including but not limited to funeral expenses, accrued medical expenses, pain, suffering and mental anguish of Plaintiffs' Decedent, past and future lost wages and benefits of Plaintiffs' Decedent, past and future loss of enjoyment of life by Plaintiffs' Decedent, past and future loss of love, society and companionship of Plaintiffs' Decedent, and all other damages to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS/IMPLIED WARRANTIES

66.     Plaintiff adopts by reference all of the allegations contained in the preceding paragraphs above, each inclusive, as though fully set forth herein.

67.     When Pfizer placed BEXTRA® into the stream of commerce, Pfizer intended that BEXTRA® be used as a treatment for acute pain, and expressly and/or impliedly warranted that BEXTRA® would be safe and effective when used for that purpose.

68.     Plaintiffs' Decedent reasonably relied upon the expertise, skill, judgment and knowledge of the Defendant and the express and/or implied warranty that BEXTRA® would be safe and effective when used as intended.

69.     Plaintiffs' Decedent used BEXTRA® for its ordinary and intended purpose and as directed by his physician.

70.     Pfizer breached its express and implied warranties of safety, fitness and merchantability because BEXTRA® was defective and unreasonably dangerous and caused the Plaintiffs' Decedent to suffer catastrophic injury and death.

71.     As a direct and proximate result of the acts and omissions of Pfizer, Plaintiffs

14

have suffered damages, including but not limited to funeral expenses, accrued medical expenses, pain, suffering and mental anguish of Plaintiffs' Decedent, past and future lost wages and benefits of Plaintiffs' Decedent, past and future loss of enjoyment of life by Plaintiffs' Decedent, past and future loss of love, society and companionship of Plaintiffs' Decedent, and all other damages to be proven at trial.

## COUNT V
## NEGLIGENT MISREPRESENTATION

72.     Plaintiff adopts by reference all of the allegations contained in the preceding paragraphs above, each inclusive, as though fully set forth herein.

73.     As more fully described above, Defendant committed negligent misrepresentations and omissions against Plaintiffs' Decedent in this case.

74.     As more fully described above, these misrepresentations and omissions were material or significant.

75.     As more fully described above, Defendant failed to exercise reasonable care in making said misrepresentations and omissions.

76.     As more fully described above, Plaintiffs' Decedent justifiably relied upon said misrepresentations and omissions.

77.     As more fully described above, Plaintiffs' Decedent suffered damages caused directly and proximately by reasonable reliance on said misrepresentations and omissions.

78.     As a direct and proximate result of the acts and omissions of Pfizer, Plaintiffs have suffered damages, including but not limited to funeral expenses, accrued medical expenses, pain, suffering and mental anguish of Plaintiffs' Decedent, past and future lost wages and

15

benefits of Plaintiffs' Decedent, past and future loss of enjoyment of life by Plaintiffs' Decedent,

past and future loss of love, society and companionship of Plaintiffs' Decedent, and all other

damages to be proven at trial.

### COUNT VI
### COMMON LAW AND STATUTORY FRAUD,
### FRAUDULENT MISREPRESENTATION AND SUPPRESSION

79.    Plaintiff adopts by reference all of the allegations contained in the preceding

paragraphs above, each inclusive, as though fully set forth herein.

80.    Defendant recklessly, knowingly, intentionally, and fraudulently misrepresented to

the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the

drug, including Plaintiffs' Decedent, the safety and efficacy of the drug and/or recklessly,

knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or

scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent,

material, adverse information regarding the safety and efficacy of BEXTRA®.

81.    Defendant's misrepresentations were communicated to the medical,

pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including

Plaintiffs' Decedent, with the intent that they reach users and/or consumers of the drug, including

Plaintiffs' Decedent.

82.    Defendant either knew or should have known that the representations were false.

83.    Defendant made the misrepresentations and/or actively concealed information

concerning the safety and efficacy of the drug with the intention and specific desire that the

medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug,

including Plaintiffs' Decedent, would rely on such in selecting BEXTRA® as a pain reliever.

16

84.    Defendant made these misrepresentations and/or actively concealed information concerning the safety and efficacy of BEXTRA® in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

85.    Defendant made these misrepresentations and actively concealed adverse information at a time when Defendant knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendant had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent.  Specifically, Defendant misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent, that:

   a.   There had been insufficient studies regarding the safety and efficacy of the drug;

   b.   The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;

   c.   Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic reactions, including, but not limited to, adverse cardiovascular events;

   d.   Defendant knew or should have known of reports of increased heart attacks and/or strokes associated with the use of the drug; and

   e.   Defendant knew or should have known of the greatly increased risk of developing heart attacks and/or strokes associated with use of BEXTRA®; yet, despite this it was downplaying the risk of the drug.

86.    Defendant, its sales representatives, employees, distributors, agents and/or detail persons perpetuated the misrepresentations of and/or active concealment by Defendant directly and/or indirectly.

17

87.     The misrepresentations of and/or active concealment by Defendant constitute a continuing tort.  Indeed, through Defendant's product inserts, Defendant continued to misrepresent the potential risks and serious side effects associated with the use of BEXTRA®. Moreover, Defendant had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs' Decedent, about the potential risks and serious side effects associated with the use of BEXTRA® in a timely manner, yet it failed to provide such warning.

88.     Plaintiffs' Decedent justifiably relied on and/or was induced by the misrepresentations and/or active concealment of defendants to purchase and ingest BEXTRA® to his detriment.

89.     As a direct, legal, proximate and producing result of the misrepresentations of Defendant, Plaintiffs' Decedent sustained devastating injuries and damages.

90.     Defendant fraudulently represented to the Plaintiffs' Decedent, either directly or indirectly through others upon whom it was known the Plaintiffs' Decedent would rely, that BEXTRA® was "safe and effective," and "that the benefits of taking BEXTRA® outweighed any risks," and misrepresented and concealed safety and effectiveness information regarding BEXTRA® including but not limited to the propensity to cause serious physical harm.

91.     Specifically, one or more of such false statements and/or material omissions were communicated to Plaintiffs' Decedent via advertisements at or about the time such products were prescribed to the Plaintiffs' Decedent.  These false statements and/or material omissions were material in that Plaintiffs' Decedent would not have ingested BEXTRA® but for these statements.  Plaintiffs' Decedent, without knowledge of the falsity of the aforementioned false

18

statements and material omissions, justifiably relied upon those statements to their detriment, and thereby suffered injury.

92.    The fraudulent misrepresentations of Defendant took the form of, among other forms, express and implied statements, publicly disseminated misinformation, inadequate, incomplete and misleading warnings about the subject products, failure to disclose important safety and injury information regarding the products while having a duty to disclose such information to the Plaintiffs' Decedent and/or to others on whom it was known the Plaintiffs' Decedent would rely, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead the Plaintiffs' Decedent and others upon whom the Plaintiffs' Decedent would rely regarding the safety of BEXTRA®.

93.    BEXTRA® was in fact unsafe and its use posed a risk of injury and death which outweighed its purported benefits, such that injury was in fact caused to the Plaintiffs' Decedent and others.

94.    Defendant knew or should have known that these representations and/or omissions were false and misleading at the time they were made and Defendant made the representations and/or omissions with the intent or purpose that the Plaintiffs' Decedent and others who would rely upon them, leading to the use of BEXTRA® by the Plaintiffs' Decedent.

95.    Defendant fraudulently, intentionally and/or negligently misrepresented to the Plaintiffs' Decedent and/or to others whom Plaintiffs' Decedent would rely, as well as to the general public, the safety and effectiveness of BEXTRA® and/or fraudulently, intentionally and/or negligently concealed material including adverse information regarding the safety and effectiveness of the drug.

96.     Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that BEXTRA® had defects, dangers, and characteristics that were other than what the Defendant had represented to the Plaintiffs' Decedent, to those upon whom Plaintiffs' Decedent would rely, and to the consuming public.

97.     The misrepresentations of and/or active concealment alleged above were perpetuated directly and/or indirectly by the Defendant.

98.     The Defendant knew or should have known that these representations were false and made the representations with the intent or purpose that the Plaintiffs' Decedent would rely on them, leading to the use of the drugs by the Plaintiffs' Decedent.

99.     At the time of Defendant's fraudulent misrepresentations, Plaintiffs' Decedent was unaware of the falsity of the statements being made and believed them to be true.  Plaintiffs' Decedent had no knowledge of the information concealed and/or suppressed by Defendant.

100.    Plaintiff 's Decedent justifiably relied on and/or was induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendant did suppress, conceal or fail to disclose to their detriment.

101.    Defendant had a post-sale duty to warn the Plaintiffs' Decedent either directly or indirectly about the potential risks and complications associated with BEXTRA® in a timely manner.

102.    The misrepresentations of and/or active concealment by the Defendant constitute a continuing tort and were only recently discovered by the Plaintiffs' Decedent's estate.

103.    Defendant made the misrepresentations and/or actively concealed this information with the intention and specific desire that the Plaintiffs' Decedent and the consuming public,

would rely on such or the absence of information in selecting BEXTRA® as treatment for acute pain.

104.    As a direct and proximate result of the acts and omissions of Pfizer, Plaintiffs have suffered damages, including but not limited to funeral expenses, accrued medical expenses, pain, suffering and mental anguish of Plaintiffs' Decedent, past and future lost wages and benefits of Plaintiffs' Decedent, past and future loss of enjoyment of life by Plaintiffs' Decedent, past and future loss of love, society and companionship of Plaintiffs' Decedent, and all other damages to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment of and against Defendant in an amount sufficiently to reasonably and fully compensate the Plaintiffs for wrongful death, the injuries suffered by Plaintiffs' Decedent, for punitive damages, and for pre and post-judgment interest all costs of court, and for such other relief as to the Court seems meet.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable in this civil action.

Respectfully submitted this the 11th day of October 2007.

By: _____

Bryan Aylstock, MSB#:  100828
Justin Witkin, MSB#: 100827
*Aylstock, Witkin, Kreis & Overholtz, PLLC*
55 Baybridge Drive
Gulf Breeze, FL  32561
(850) 916-7450 (phone)
(850) 916-7449 (fax)
Attorneys for Plaintiffs

21

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CAROLYN DOWNS and TANYA FLEMING,
Individually and for the Estate of
SAMUEL DOWNS, Deceased,                                    **PLAINTIFFS**

**vs.**                                      **CIVIL ACTION NO. 3:07cv745 DPJ-JCS**

**PFIZER, INC.**                                                **DEFENDANT**

Pending Transfer to MDL-1699
(In re Bextra and Celebrex Marketing,
Sales Practices and Products
Liability Litigation)

### DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT

NOW COMES Defendant Pfizer Inc. (improperly captioned in Plaintiffs' Complaint as "Pfizer, Inc.") ("Pfizer" or "Defendant"), and files its Answer to Plaintiffs' Complaint ("Complaint"), and would respectfully show the Court as follows:

**I.**
### PRELIMINARY STATEMENT

The Complaint does not state in sufficient detail when Decedent was prescribed or used Bextra® (valdecoxib) ("Bextra®"). Accordingly, this Answer can only be drafted generally. Defendant may seek leave to amend this Answer when discovery reveals the specific time periods in which Decedent was prescribed and used Bextra®.

**II.**
### ORIGINAL ANSWER

### Response to Preliminary Statement

1.    Defendant admits that Plaintiffs brought this civil action seeking monetary damages, but denies that Plaintiffs are entitled to any relief or damages. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same.

Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant denies that Bextra® caused Plaintiffs or Decedent injury or damage and denies the remaining allegations contained in this paragraph of the Complaint.

2.      Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant denies the remaining allegations in this paragraph of the Complaint.

3.      Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective or unreasonably dangerous, and denies the remaining allegations in this paragraph of the Complaint.

4.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Decedent's medical condition and whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

**Response to Allegations Regarding Parties**

5.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's citizenship and

relationship to Decedent, and, therefore, denies the same. Defendant denies the remaining allegations in this paragraph of the Complaint.

6.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's citizenship and relationship to Decedent, and, therefore, denies the same. Defendant denies the remaining allegations in this paragraph of the Complaint.

7.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint, and, therefore, denies the same. Defendant denies the remaining allegations in this paragraph of the Complaint.

8.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Decedent's age and citizenship, and, therefore, denies the same. Defendant denies the remaining allegations in this paragraph of the Complaint.

9.      Defendant admits that Pfizer is a Delaware corporation with its principal place of business in New York. Defendant admits that Pfizer does business in the State of Mississippi. Defendant admits that Pfizer may be served through its registered agent. Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant denies the remaining allegations in this paragraph of the Complaint.

10.     Defendant admits that Pfizer does business in the State of Mississippi. Defendant denies the remaining allegations in this paragraph of the Complaint.

11.     Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent a response is deemed required, Defendant denies any wrongful conduct, denies committing a tort in the State of Mississippi, and denies the remaining allegations in this paragraph of the Complaint.

12.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding the judicial district in which the asserted claims allegedly arose and, therefore, denies the same. Defendant admits that Pfizer is a Delaware corporation with its principal place of business in New York. Defendant denies any wrongful conduct, denies committing a tort within the State of Mississippi, and denies the remaining allegations in this paragraph of the Complaint.

13.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding the amount in controversy, and, therefore, denies the same. However, Defendant admits that Plaintiffs claim that the amount in controversy meets jurisdictional limits, exclusive of interests and costs.

## Response to Common Factual Allegations

14.    Defendant admits that Plaintiffs brought this civil action seeking monetary damages, but denies that Plaintiffs are entitled to any relief or damages. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

15.    Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States, including Mississippi, to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant denies the remaining allegations in this paragraph of the Complaint.

-4-

16.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant denies that Bextra® caused Plaintiffs or Decedent injury or damage and denies the remaining allegations contained in this paragraph of the Complaint.

17.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations in this paragraph of the Complaint.

18.    Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant denies the remaining allegations in this paragraph of the Complaint.

19.    Defendant admits that Bextra® is in a class of drugs that is, at times, referred to as non-steroidal anti-inflammatory drugs ("NSAIDs"). Defendant states that, as stated in the FDA-approved labeling for Bextra®, "[t]he mechanism of action is believed to be due to the inhibition of prostaglandin synthesis primarily through inhibition of cyclooxygenase-2 (COX-2). Defendant admits that Bextra® was approved by the FDA on November 16, 2001. Defendant admits, as indicated in the package insert approved by the FDA, that Bextra® is indicated for use in the relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis, as well as for the treatment of primary dysmenorrhea. Defendant denies the remaining allegations in this paragraph of the Complaint.

20.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies the remaining allegations contained in this paragraph of the Complaint.

21.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra® and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

22.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant denies the remaining allegations contained in this paragraph of the Complaint.

23.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

24.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®

and, therefore, denies the same. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations in this paragraph of the Complaint.

25.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

26.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

27.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Decedent's medical condition and whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant denies that Bextra® caused Plaintiffs or Decedent injury or damage and denies the remaining allegations contained in this paragraph of the Complaint.

28.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant

denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

29.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

30.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

31.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

32.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved

prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

33.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

34.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant denies the remaining allegations contained in this paragraph of the Complaint.

35.     Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent a response is deemed required, Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

36.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant

denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

37.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

**Response to First Cause of Action:**
**Negligence and Negligent Infliction of Emotional Distress**

38.    Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

39.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant admits that it had duties as are imposed by law but denies having breached such duties. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies the remaining allegations contained in this paragraph of the Complaint.

40.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant

denies any wrongful conduct, denies that Bextra® is unreasonably dangerous, and denies the remaining allegations contained in this paragraph of the Complaint.

41.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

42.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective or unreasonably dangerous, and denies the remaining allegations contained in this paragraph of the Complaint, including all subparts.

43.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is unreasonably dangerous, and denies the remaining allegations contained in this paragraph of the Complaint.

44.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

45.     Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

**Response to Second Cause of Action:**
**Strict Products Liability – Design Defect**

46.     Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

47.     Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent a response is deemed required, Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant denies the allegations in this paragraph of the Complaint.

48.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant

denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

49.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same.   Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.   Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.   Defendant denies any wrongful conduct, denies that Bextra® is defective, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

50.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.   Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.   Defendant denies any wrongful conduct, denies that Bextra® is defective, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

51.     Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.   Defendant denies the remaining allegations in this paragraph of the Complaint.

52.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same.   Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.

Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective or unreasonably dangerous, and denies the remaining allegations contained in this paragraph of the Complaint.

53.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant admits that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States, including Mississippi, to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendant states that Bextra® was expected to reach consumers without substantial change in the condition from the time of sale. Defendant denies the remaining allegations in this paragraph of the Complaint.

54.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was expected to reach consumers without substantial change in the condition from the time of sale. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective or unreasonably dangerous, and denies the remaining allegations contained in this paragraph of the Complaint, including all subparts.

55.     Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

### Response to Third Cause of Action:
### Strict Products Liability – Warnings Defect

56.     Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

57.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective or unreasonably dangerous, and denies the remaining allegations contained in this paragraph of the Complaint.

58.     Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent a response is deemed required, Defendant denies the remaining allegations in this paragraph of the Complaint.

59.     Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required. To the extent that a response is deemed required, Defendant admits that it had duties as are imposed by law but denies having breached such duties. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

60.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

61.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

62.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant denies the remaining allegations contained in this paragraph of the Complaint.

63.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective, and denies the remaining allegations contained in this paragraph of the Complaint.

64.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant

denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

65.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

### Response to Fourth Cause of Action: Express and Implied Warranties

66.    Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

67.    Defendant states, as indicated in the package insert approved by the FDA, that Bextra® is indicated for use in the relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis, as well as for the treatment of primary dysmenorrhea. Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

68.    Defendant admits that Pfizer provided FDA-approved prescribing information regarding Bextra®. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

69.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®,

-17-

and, therefore, denies the same. Defendant denies the remaining allegations contained in this paragraph of the Complaint.

70.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective or unreasonably dangerous, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

71.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

### Response to Fifth Cause of Action: Negligent Misrepresentation

72.    Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

73.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

74.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

75.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

76.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

77.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

78.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

**Response to Sixth Cause of Action: Fraud and Fraudulent Misrepresentation**

79.    Defendant incorporates by reference its responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

80.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective

when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

81.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

82.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

83.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

84.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

85.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® is defective, and denies the remaining allegations contained in this paragraph of the Complaint, including all subparts.

86.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

87.     Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendant admits that it had duties as are imposed by law but denies having breached such duties.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in

accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

88.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

89.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

90.     Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

91.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

92.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

93.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

94.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable

standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

95.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

96.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct, denies that Bextra® is defective, and denies the remaining allegations contained in this paragraph of the Complaint.

97.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

98.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same. Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable

-24-

standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

99.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

100.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Decedent used Bextra®, and, therefore, denies the same.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

101.    Defendant states that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendant admits that it had duties as are imposed by law but denies having breached such duties.  Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

102.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

103.    Defendant states that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendant states that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendant denies any wrongful conduct and denies the remaining allegations contained in this paragraph of the Complaint.

104.    Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

<strong><u>Response to Prayer For Relief</u></strong>

Answering the unnumbered paragraph of the Complaint entitled "Prayer for Relief," Defendant denies any wrongful conduct, denies that Bextra® caused Plaintiffs or Decedent injury or damage, and denies the remaining allegations contained in this paragraph of the Complaint.

<strong>III.</strong><br/><strong><u>GENERAL DENIAL</u></strong>

Defendant denies the allegations and/or legal conclusions set forth in Plaintiffs' Complaint that have not been previously admitted, denied, or explained.

## IV.
## AFFIRMATIVE DEFENSES

Defendant reserves the right to rely upon any of the following or additional defenses to claims asserted by Plaintiffs to the extent that such defenses are supported by information developed through discovery or evidence at trial. Defendant affirmatively shows that:

### First Defense

1.    The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

2.    Bextra® is a prescription medical product. The federal government has preempted the field of law applicable to the labeling and warning of prescription medical products. Defendant's labeling and warning of Bextra® was at all times in compliance with applicable federal law. Plaintiffs' causes of action against Defendant, therefore, fail to state a claim upon which relief can be granted; such claims, if allowed, would conflict with applicable federal law and violate the Supremacy Clause of the United States Constitution.

### Third Defense

3.    At all relevant times, Defendant provided proper warnings, information and instructions for the drug in accordance with generally recognized and prevailing standards in existence at the time.

### Fourth Defense

4.    At all relevant times, Defendant's warnings and instructions with respect to the use of Bextra® conformed to the generally recognized, reasonably available, and reliable state of knowledge at the time the drug was manufactured, marketed and distributed.

### Fifth Defense

5.    Plaintiffs' action is time-barred as it is filed outside of the time permitted by the applicable Statute of Limitations, and same is pled in full bar of any liability as to Defendant.

### Sixth Defense

6.    Plaintiffs' action is barred by the statute of repose.

### Seventh Defense

7.    Plaintiffs' claims against Defendant are barred to the extent Plaintiffs and Decedent were contributorily negligent, actively negligent or otherwise failed to mitigate their damages, and any recovery by Plaintiffs should be diminished accordingly.

### Eighth Defense

8.    The proximate cause of the loss complained of by Plaintiffs is not due to any acts or omissions on the part of Defendant.  Rather, said loss is due to the acts or omissions on the part of third parties unrelated to Defendant and for whose acts or omissions Defendant is not liable in any way.

### Ninth Defense

9.    The acts and/or omissions of unrelated third parties as alleged constituted independent, intervening causes for which Defendant cannot be liable.

### Tenth Defense

10.    Any injuries or expenses incurred by Plaintiffs or Decedent were not caused by Bextra®, but were proximately caused, in whole or in part, by an idiosyncratic reaction, operation of nature, or act of God.

### Eleventh Defense

11.    Defendant affirmatively denies that it violated any duty owed to Plaintiffs or Decedent.

### Twelfth Defense

12.    A manufacturer has no duty to warn patients or the general public of any risk, contraindication, or adverse effect associated with the use of a prescription medical product. Rather, the law requires that all such warnings and appropriate information be given to the prescribing physician and the medical profession, which act as a "learned intermediary" in determining the use of the product. Bextra® is a prescription medical product, available only on the order of a licensed physician. Bextra® provided an adequate warning to Decedent's treating and prescribing physicians.

### Thirteenth Defense

13.    The product at issue was not in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

### Fourteenth Defense

14.    Bextra® was at all times material to the Complaint reasonably safe and reasonably fit for its intended use and the warnings and instructions accompanying Bextra® at the time of the occurrence of the injuries alleged by Plaintiffs were legally adequate for its approved usages.

### Fifteenth Defense

15.    Plaintiffs' causes of action are barred in whole or in part by the lack of a defect as the Bextra® allegedly ingested by Decedent was prepared in accordance with the applicable standard of care.

### Sixteenth Defense

16.    Plaintiffs' and Decedent's alleged injuries/damages, if any, were the result of misuse or abnormal use of the product Bextra® after the product left the control of Defendant and any liability of Defendant is therefore barred.

### Seventeenth Defense

17.    Plaintiffs' alleged damages were not caused by any failure to warn on the part of Defendant.

### Eighteenth Defense

18.    Plaintiffs' and Decedent's alleged injuries/damages, if any, were the result of preexisting or subsequent conditions unrelated to Bextra®.

### Nineteenth Defense

19.    Plaintiffs and Decedent knew or should have known of any risk associated with Bextra®; therefore, the doctrine of assumption of the risk bars or diminishes any recovery.

### Twentieth Defense

20.     Plaintiffs are barred from recovering against Defendant because Plaintiffs' claims are preempted in accordance with the Supremacy Clause of the United States Constitution and by the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 et. seq.

### Twenty-first Defense

21.     Plaintiffs' claims are barred in whole or in part under the applicable state law because the subject pharmaceutical product at issue was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

### Twenty-second Defense

22.     The manufacture, distribution and sale of the pharmaceutical product referred to in Plaintiffs' Complaint were at all times in compliance with all federal regulations and statutes, and Plaintiffs' causes of action are preempted.

### Twenty-third Defense

23.     Plaintiffs' claims are barred in whole or in part by the deference given to the primary jurisdiction of the Food and Drug Administration over the subject pharmaceutical product at issue under applicable federal laws, regulations, and rules.

### Twenty-fourth Defense

24.     Plaintiffs' claims are barred in whole or in part because there is no private right of action concerning matters regulated by the Food and Drug Administration under applicable federal laws, regulations, and rules.

### Twenty-fifth Defense

25.     Plaintiffs' claims are barred in whole or in part because Defendant provided adequate "direction or warnings" as to the use of the subject pharmaceutical product within the meaning of Comment j to Section 402A of the Restatement (Second) of Torts.

### Twenty-sixth Defense

26.    Plaintiffs' claims are barred or limited to a product liability failure to warn claim because Bextra® is a prescription pharmaceutical drug and falls within the ambit of Restatement (Second) of Torts § 402A, Comment k.

### Twenty-seventh Defense

27.    Plaintiffs' claims are barred in whole or in part because the subject pharmaceutical product at issue "provides net benefits for a class of patients" within the meaning of Comment f to § 6 of the Restatement (Third) of Torts: Products Liability.

### Twenty-eighth Defense

28.    Plaintiffs' claims are barred under § 4, et seq., of the Restatement (Third) of Torts: Products Liability.

### Twenty-ninth Defense

29.    To the extent that Plaintiffs are seeking punitive damages, Plaintiffs have failed to plead facts sufficient under the law to justify an award of punitive damages.

### Thirtieth Defense

30.    The imposition of punitive damages in this case would violate Defendant's rights to procedural due process under the Fourteenth Amendment of the United States Constitution and Constitution of the State of Mississippi, and would additionally violate Defendant's right to substantive due process under the Fourteenth Amendment of the United States Constitution.

### Thirty-first Defense

31.    Plaintiffs' claims for punitive damages are barred, in whole or in part, by the Fifth and Fourteenth Amendments to the United States Constitution.

### Thirty-second Defense

32.    The imposition of punitive damages in this case would violate the First Amendment to the United States Constitution and the Constitution of the State of Mississippi.

### Thirty-third Defense

33.    Plaintiffs' punitive damage claims are preempted by federal law.

### Thirty-fourth Defense

34.    In the event that reliance was placed upon Defendant's nonconformance to an express representation, this action is barred as there was no reliance upon representations, if any, of Defendant.

### Thirty-fifth Defense

35.    Plaintiffs and Decedent failed to provide Defendant with timely notice of any alleged nonconformance to any express representation.

### Thirty-sixth Defense

36.    To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

### Thirty-seventh Defense

37.    Plaintiffs' claims are barred, in whole or in part, because the advertisements, if any, and labeling with respect to the subject pharmaceutical products were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

### Thirty-eighth Defense

38.    To the extent that Plaintiffs seek punitive damages for the conduct which allegedly caused injuries asserted in the Complaint, punitive damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, and the Full Faith and Credit Clause of the United States Constitution and the Constitution of the State of Mississippi. Any law, statute, or other authority purporting to permit the recovery of punitive damages in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and/or the amount, if any; (2) is void for vagueness in that it failed to provide adequate advance notice as to

what conduct will result in punitive damages; (3) permits recovery of punitive-damages based on out-of-state conduct, conduct that complied with applicable law, or conduct that was not directed, or did not proximately cause harm, to Plaintiffs and Decedent; (4) permits recovery of punitive damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiffs and Decedent and to the amount of compensatory damages, if any; (5) permits jury consideration of net worth or other financial information relating to Defendant; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any punitive damages awards; (7) lacks constitutionally sufficient standards for appellate review of punitive damages awards; and (8) otherwise fails to satisfy Supreme Court precedent, including, without limitation, *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 (1991); *TXO Production Corp. v. Alliance Resources, Inc.*, 509 U.S. 443 (1993); *BMW of North America, Inc. v. Gore*, 519 U.S. 559 (1996); and *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

### Thirty-ninth Defense

39.     The methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

### Fortieth Defense

40.     The claims asserted in the Complaint are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the-art industry standards existing at the time of the sale.

### Forty-first Defense

41.     If Plaintiffs and Decedent have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not

having real or apparent authority to take said actions on behalf of Defendant and over whom Defendant had no control and for whom Defendant may not be held accountable.

### Forty-second Defense

42.    The claims asserted in the Complaint are barred, in whole or in part, because Bextra® was not unreasonably dangerous or defective, was suitable for the purpose for which it was intended, and was distributed with adequate and sufficient warnings.

### Forty-third Defense

43.    Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, and/or estoppel.

### Forty-fourth Defense

44.    Plaintiffs' claims are barred because Plaintiffs' and Decedent's injuries, if any, were the result of the pre-existing and/or unrelated medical, genetic and/or environmental conditions, diseases or illnesses, subsequent medical conditions or natural courses of conditions of Plaintiffs and Decedent, and were independent of or far removed from Defendant's conduct.

### Forty-fifth Defense

45.    The claims asserted in the Complaint are barred, in whole or in part, because Bextra® did not proximately cause injuries or damages to Plaintiffs or Decedent.

### Forty-sixth Defense

46.    The claims asserted in the Complaint are barred, in whole or in part, because Plaintiffs and Decedent did not incur any ascertainable loss as a result of Defendant's conduct.

### Forty-seventh Defense

47.    The claims asserted in the Complaint are barred, in whole or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

### Forty-eighth Defense

48.    The claims must be dismissed because Decedent would have taken Bextra® even if the product labeling contained the information that Plaintiffs contend should have been provided.

### Forty-ninth Defense

49.    The claims asserted in the Complaint are barred because the utility of Bextra® outweighed its risks.

### Fiftieth Defense

50.    Plaintiffs' damages, if any, are barred or limited by the payments received from collateral sources.

### Fifty-first Defense

51.    Defendant's liability, if any, can only be determined after the percentages of responsibility of all persons who caused or contributed toward Plaintiffs' alleged damages, if any, are determined. Defendant seeks an adjudication of the percentage of fault of the claimants and each and every other person whose fault could have contributed to the alleged injuries and damages, if any, of Plaintiffs and Decedent.

### Fifty-second Defense

52.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

### Fifty-third Defense

53.    The claims asserted in the Complaint are barred, in whole or in part, because Bextra® is comprehensively regulated by the FDA pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and regulations promulgated there under, and Plaintiffs' claims conflict with the FDCA, with the regulations promulgated by FDA to implement the FDCA, with the purposes and objectives of the FDCA and FDA's implementing regulations, and with the specific determinations by FDA specifying the language that should be used in the labeling accompanying Bextra®.    Accordingly, Plaintiffs' claims are preempted by the

Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States.

### Fifty-fourth Defense

54.    Plaintiffs' misrepresentation allegations are not stated with the degree of particularity required by Federal Rule of Civil Procedure 9(b) and should be dismissed.

### Fifty-fifth Defense

55.    To the extent that Plaintiffs rely upon any theory of breach of warranty, Plaintiffs' claims are barred because Defendant did not make or breach any express or implied warranties. Plaintiffs failed to give reasonable notice to Defendant of any alleged breach or breaches of warranty as required by Miss. Code Ann § 75-2-607(3)(a).

### Fifty-sixth Defense

56.    Any verdict or judgment rendered against Defendant must be reduced under the laws of the State of Mississippi by those amounts which have been, or will, with reasonable certainty, replace or indemnify Plaintiffs and/or Decedent, such as insurance, social security, worker's compensation, or employee benefits programs.  Plaintiffs and/or Decedent may have settled their claims for alleged injuries and damages with certain parties.  Defendant therefore is, in any event, entitled to a credit in the amount of any such settlement heretofore made between Plaintiffs and/or Decedent and any such parties.

### Fifty-seventh Defense

57.    Plaintiffs' claims for punitive damages are limited or barred by the standards governing exemplary damage awards which arise under the United States Constitution and decisions of the United States Supreme Court such as *BMW of North America v. Gore*, 116 U.S. 1589 (1996); *Cooper Industries, Inc., v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); and *State Farm Mut. Auto Ins. Co. v. Campbell*, 123 S.Ct. 1513 (U.S. 2003), or the Mississippi Constitution, statutes, and decisions of Mississippi courts.

### Fifty-eighth Defense

58.    Defendant asserts that Plaintiffs' claim for punitive damages is governed and limited by Miss. Code Ann. § 11-1-65, and Defendant hereby pleads and invokes the provisions of the same.

### Fifty-ninth Defense

59.    Bextra® and the Defendant's actions conformed to the state of the art medical and scientific knowledge at all times relevant to this lawsuit and/or Bextra® complied with applicable product safety statutes and regulations as described in Restatement (Third) of Torts: Products Liability § 4.

### Sixtieth Defense

60.    Defendant satisfied its duty to warn under the learned intermediary doctrine and Plaintiffs' claims are therefore barred.

### Sixty-first Defense

61.    Plaintiffs' allegations of fraud, deceit, and fraudulent misrepresentation are not stated with the degree of particularity required by F.R.C.P. 9(b) and should be dismissed.

### Sixty-second Defense

62.    Defendant hereby pleads all defenses contained in Miss. Code Ann. § 11-1-63 and hereby invokes the provisions of Miss. Code Ann. § 85-5-7.

### Sixty-third Defense

63.    Plaintiffs failed to join all indispensable parties; as a result of such failure to join, complete relief cannot be accorded to those already parties to the action and will result in prejudice to Defendant in any possible future litigation.

### Sixty-fourth Defense

64.    Any judicially-created definitions of manufacturing defect and design defect, and standards for determining whether there has been an actionable failure to warn, are unconstitutional in that, among other things, they are void for vagueness and undue burden on

interstate commerce, as well as an impermissible effort to regulate in an area that previously has been preempted by the federal government.

### Sixty-fifth Defense

65.    To the extent that Plaintiffs seek punitive damages for an alleged act or omission of Defendant, no act or omission was oppressive, fraudulent, or malicious, and, therefore, any award of punitive damages is barred.

### Sixty-sixth Defense

66.    Plaintiffs' claims are barred in whole or in part because Plaintiffs lack standing to bring such claims.

### Sixty-seventh Defense

67.    Venue is improper in the Circuit Court of Hinds County, Mississippi, First Judicial District.

### Sixty-eighth Defense

68.    Defendant reserves the right to supplement its assertion of defenses as it continues with its factual investigation of Plaintiffs' claims.

### V.
### JURY DEMAND

Defendant hereby demands a trial by jury.

## VI.
## PRAYER

WHEREFORE, Defendant prays that Plaintiffs take nothing by this suit; that Defendant be discharged with its costs expended in this matter, and for such other and further relief to which it may be justly entitled.

This the 20th day of December, 2007.

Respectfully submitted,

By:   /s/        Walter T. Johnson
Walter T. Johnson (MBN 8712)
Leigh D. Vernon (MBN 99696)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300
Jackson, Mississippi 39205-0650
Telephone: (601) 948-6470
Facsimile (601) 354-3623

OF COUNSEL:

SOCHA, PERCZAK, SETTER & ANDERSON, P.C.
Charles Q. Socha (MBN 101382)
K. Michelle Anderson (MBN 101421)
Denver Financial Center Tower 1
1775 Sherman Street, Suite 1925
Denver, Colorado 80203
Telephone: (303) 832-7265
Facsimile: (303) 832-7438

ATTORNEYS FOR DEFENDANT PFIZER INC.

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system and forwarded via United States first-class mail,

postage prepaid, a true and correct copy to the following:

> Bryan Aylstock
> Justin Witkin
> Aylstock, Witkin, Kreis & Overholtz, PLLC
> 55 Baybridge Drive
> Gulf Breeze, Florida 32561

**ATTORNEYS FOR PLAINTIFFS**

This the 20th day of December, 2007.

/s/    Walter T. Johnson
WALTER T. JOHNSON

A CERTIFIED TRUE COPY

JAN 2 5 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN - 9 2008

FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION

MDL No. 1699



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

FEB 0 4 2008

J. T. NOBLIN, CLERK
BY_____DEPUTY

(SEE ATTACHED SCHEDULE)

CONDITIONAL TRANSFER ORDER (CTO-93)

On September 6, 2005, the Panel transferred 30 civil actions to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Since that time, 1,187 additional actions have been transferred to the Northern District of California. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Breyer.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Northern District of California and assigned to Judge Breyer.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of September 6, 2005, and, with the consent of that court, assigned to the Honorable Charles R. Breyer.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

JAN 2 5 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By_____Deputy Clerk
Date _1-28-08_

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES**
**PRACTICES AND PRODUCTS LIABILITY LITIGATION**          MDL No. 1699

### SCHEDULE CTO-93 - TAG-ALONG ACTIONS

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| MINNESOTA | |
| MN  0  07-4847 | David E. Huard v. Pfizer Inc., et al. |
| MN  0  07-4848 | Maria Avendano v. Pfizer Inc., et al. |
| | |
| MISSISSIPPI SOUTHERN | |
| MSS  3  07-731 | Clara Ford, etc. v. G.D. Searle & Co., et al. |
| MSS  3  07-732 | Clara Ford, etc. v. G.D. Searle & Co., et al. |
| MSS  3  07-745 | Carolyn Downs, et al. v. Pfizer Inc. |

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**          MDL No. 1699

### INVOLVED COUNSEL LIST (CTO-93)

Andy D. Birchfield, Jr.
BEASLEY ALLEN CROW METHVIN PORTIS & MILES PC
P.O. Box 4160
Montgomery, AL 36103-4160

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
Embarcadero Center West, 30th Floor
275 Battery Street
San Francisco, CA 94111-3339

Wesley T. Evans
EVANS LAW FIRM
Post Office Box 528
Canton, MS 39046

Walter T. Johnson
WATKINS & EAGER
P.O. Box 650
Jackson, MS 39205-0650

Gregory A. Markel
CADWALADER WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281

Ted G. Meadows
BEASLEY ALLEN CROW METHVIN PORTIS & MILES PC
P.O. Box 4160
Montgomery, AL 36103-4160

Amy W. Schulman
DLA PIPER US LLP
1251 Avenues of the Americas
27th Floor
New York, NY 10020-1104

Justin G. Witkin
AYLSTOCK WITKIN KREIS & OVERHOLTZ PLLC
803 North Palafox Street
Pensacola, FL 32501

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**                MDL No. 1699

### INVOLVED JUDGES LIST (CTO-93)

Hon. Michael James Davis
U.S. District Judge
14E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Hon. Donovan W. Frank
U.S. District Judge
738 Warren E. Burger Federal Bldg.
316 North Robert Street
St. Paul, MN 55101

Hon. Daniel P. Jordan, III
U.S. District Judge
110 James O. Eastland United States Courthouse
245 East Capitol Street
Jackson, MS 39201-2409

Hon. Henry T. Wingate
Chief Judge, U.S. District Court
James O. Eastland U.S. Courthouse, Suite 109
245 East Capitol Street
Jackson, MS 39201-2409

CJRA-SU, CLOSED, JCS, JURY

## U.S. District Court
## Southern District of Mississippi (Jackson)
## CIVIL DOCKET FOR CASE #: 3:07-cv-00745-DPJ-JCS
### Internal Use Only

| | |
|---|---|
| Downs et al v. Pfizer, Inc. | Date Filed: 12/20/2007 |
| Assigned to: District Judge Daniel P. Jordan, III | Date Terminated: 02/04/2008 |
| Referred to: Magistrate Judge James C. Sumner | Jury Demand: Both |
| Case in other court: Hinds Circuit Court, 251-07-01017CIV | Nature of Suit: 365 Personal Inj. Prod. Liability |
| Cause: 28:1441 Notice of Removal-Personal Injury | Jurisdiction: Diversity |

**Plaintiff**

**Carolyn Downs**                          represented by **Justin G. Witkin**
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ
803 North Palafox Street
Pensacola, FL 32501
850/916-7450
Email: jwitkin@aws-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tanya Fleming**                          represented by **Justin G. Witkin**
*individually and for the Estate of*        (See above for address)
*Samuel Downs, deceased*                    *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Pfizer, Inc.**                           represented by **Walter T. Johnson**
WATKINS & EAGER
P. O. Box 650
Jackson, MS 39205-0650
(601) 948-6470
Email: wjohnson@watkinseager.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leigh Davis Vernon**
WATKINS & EAGER
P. O. Box 650

A TRUE COPY, I HEREBY CERTIFY.
J. T. NOBLIN, CLERK
BY:
DEPUTY CLERK

Jackson, MS 39205-0650
(601) 948-6470
Email: lvernon@watkinseager.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/20/2007 | 🌑1 | NOTICE OF REMOVAL by Pfizer, Inc. from Hinds Circuit Court, case number 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CIV. JURY DEMAND. ( Filing fee $ 350 receipt number 22830) State court record maintained in file. (Attachments: # 1 Civil Cover Sheet # 2 Lower Court Complaint)(THR) Modified on 12/21/2007 to reflect that the case was filed on 12/20/07 instead of 12/19/07(cwl). (Entered: 12/20/2007) |
| 12/20/2007 | 🌑 | (Court only) ***Set Mag. Judge James C. Sumner, Pending, Jury Flags (THR) (Entered: 12/20/2007) |
| 12/20/2007 | 🌑2 | ANSWER to Complaint with Jury Demand by Pfizer, Inc..(Johnson, Walter) (Entered: 12/20/2007) |
| 12/20/2007 | 🌑3 | Corporate Disclosure Statement by Pfizer, Inc. (Johnson, Walter) (Entered: 12/20/2007) |
| 12/21/2007 | 🌑4 | MOTION to Stay *or Deferral of All Proceedings Pending Transfer to Multidistrict Litigation Proceedings* by Pfizer, Inc. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H)(Johnson, Walter) (Entered: 12/21/2007) |
| 12/21/2007 | 🌑 | DOCKET ANNOTATION as to # 1 notice of removal. Modified docket to reflect that the notice of removal was filed on 12/20/07 instead of 12/19/07. (cwl) (Entered: 12/21/2007) |
| 12/27/2007 | 🌑5 | ORDER granting 4 Motion to Stay pending transfer to MDL. Signed by Judge James C. Sumner on December 27, 2007 (CSF) (Entered: 12/27/2007) |
| 12/27/2007 | 🌑 | (Court only) ***Clear CJRA-P Flag (CSF) (Entered: 12/27/2007) |
| 01/14/2008 | 🌑6 | COPY OF CONDITIONAL TRANSFER ORDER FROM MDL: transferring case to the Northern District of California (Attachments: # 1 Cover Letter)(THR) (Entered: 01/30/2008) |
| 02/04/2008 | 🌑7 | CERTIFIED COPY OF CONDITIONAL TRANSFER ORDER: transferring this case to the U.S. District Court for the Northern District of California. (Attachments: # 1 Cover Letter).(RRL) (Entered: 02/04/2008) |
| 02/04/2008 | 🌑 | Remark: original court file and certified copy of docket entries forwarded to U.S. District Court/Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102. (RRL) (Entered: 02/04/2008) |